Good morning. May it please the court. My name is James Healy and I represent plaintiff appellants in this matter, C.A.K. and her family. Chief Judge Howard, I'd like to reserve three minutes for rebuttal if I could. Yes. Thank you. On June 27th, 2011, a paragraph was inadvertently left out of a piece of legislation, an amendment to Puerto Rico Bill 4105. Nobody noticed for a couple of years and then in 2013, the legislature, intending to correct the error, made matters worse, particularly for C.A.K. and in fact, created the tangle of issues that are potential issues that are before this court. This should be at its core, a simple case of statutory interpretation in which the lower court looked only at the text of the statute, the remedial statute, law number 150 of 2013, and ruled that the health care providers of Hospital San Antonio received immunity and that Hospital San Antonio received the benefits of civil damages caps for malpractice, but that that was granted to them retroactive to a time at which they did not previously have those benefits. And that ruling was an error and should be reversed by this court for two reasons. First, the lower court in looking just at the language failed to consider the stated intentions of the bills. And second, the lower court failed to harmonize the statute with existing Puerto Rico law and with the Puerto Rico Constitution. To understand the intention of the bills, the court need only look at the statement of purpose that exists in every bill in Puerto Rico. But that's just not the way we proceed. We don't do our job that way. We look first at the text. Yes, Your Honor, that is correct. However, the court is bound to apply Puerto Rico case law, which has been very clear. The civil code says you look at the text first as well. The text dominates. In fact, Your Honor, while the civil code, I believe you're referring to Article 14, says that the text dominates, Article 3 talks about the importance of intention. And in fact, in interpreting those, the Puerto Rico Supreme Court has said on numerous occasions, I think most eloquently by the defendant Colazo Court, and I'll quote, it is a cardinal tenet of hermeneutics that when courts construe a specific statutory provision, they should always take into consideration the aims sought by the Legislative Assembly when it passed the law. And we should construe it in a manner that assures the originally intended result. So at least help me with it. I mean, this does seem like a remarkable statute that they give the hospital sort of impunity for damage to little children through negligence. But on the face of the statute, it clearly says it applies to San Antonio Hospital. Well, if I can answer Your Honor's question by directing you back first. When they passed the, is it 2015, is that when they passed it? The middle statute? Well, this law was amended more than a dozen times since 1986. The statute that was mistaken was in 2011. That was the one that eliminated a paragraph. Then, in the interim, Hospital San Antonio was granted some protection, arguably all or some protection. Well, no, stay with that. It says the limits of liability shall be applied to San Antonio Hospital. That seems not very ambiguous. As of that point, putting to one side retroactivity, the next day you'd have a Dickens of the time saying those limits of liability didn't apply to San Antonio Hospital. And if Your Honor is looking at the 2012 statute, law number 278, we have never discounted, we never argued that back. That as of September 29, 2012, prospectively, going forward, Hospital San Antonio enjoyed some forms, and the reason I'm hesitating there, Your Honor, is there's an issue that will be raised in the next appeal as to actually what that statute in 2012 granted. But let's assume for the moment that it granted them immunity for its health care providers and the benefit of the same civil caps that the state of Puerto Rico. So it's done that, but let's assume it's not retroactive. If you'd sued the next day, it wouldn't have been retroactive to a prior event. But then they pass another statute, and they say the act shall govern immediately after its approval and shall have retroactive effect over any cause of action. That is correct, Your Honor. And that is why we feel that it's critical to look at the purpose, because the same query that I hear in Your Honor is what's the ambiguity there? The ambiguity is that the purpose of that statute was to correct the mistake. Put to one side, I mean, one way the legislature tells us its purpose is in the text of the statute. And so if the text unambiguously says it's retroactive, why shouldn't I think that one of the legislature's intentions was to make it retroactive? I think, Your Honor, you cannot look at, and I think that the entire bill has to be considered. And if you look at, and if you'll just bear with me for a moment, if you look at the statement of purpose of that bill, it actually refers to exactly the issue that we are discussing here. The statement of purpose was we made a mistake in 2011 and we need to correct it because that mistake was in violation of the Constitution of Puerto Rico that says that the title of a bill must indicate the contents of the bill. Right, so I think what you're saying distinguished two situations. One is an act says the car is black, and you look at the legislative history, and the legislative history says we want to make clear the car is not black. That's a direct conflict in the legislative history and the statute. But you could have a statute that says the car is black, and you could see that they wanted to pass this statute to make clear that buses were black. Well, all you then know is that, yes, they accomplished that purpose because it also covers buses elsewhere. They used motor vehicles, and it covers cars. In which there's nothing inconsistent about having a narrow purpose and broader text as it would be about having a direct conflict between the purpose and the text. I think, Your Honor, and this perhaps brings me to my other point about if the court is going to say, well, you know, intent, we might not want to look at that in this case if we can just look at the text of the statute. Because I think that's what the lower court did. The problem is Puerto Rico on three fronts requires that that not be the only thing you look at if the statute is not clear on its face. Now, in fact, the Puerto Rico Supreme Court in 2017 in the Figueroa case made very clear that this statute is not clear on its face. This is not my opinion. This is their opinion. And if the statute is not clear on its face, it violates Article III of the Civil Code, and it violates the section of the Puerto Rico Constitution that says the contents of the bill must be reflected in its title, then there must be a greater inquiry into what was the purpose and what is the intent of this law and what does it mean. And not to harp, but if you go back to the 2013 law, which is the law number 150, which we are talking about here, the legislature says in the purpose, look, what we did in 2011 is no law for precisely the reasons I've just said. Because the Puerto Rico Constitution does not allow us to make a law that is not reflected in the title. And in 2011, we were not trying to take the Comprehensive Cancer Center out of protection of Law 4105. That was not our intention, and it's not reflected in the title, and therefore we're passing this new law to correct that. But in doing that, respectfully, they made another mistake. They took an interim section of the statute that was passed in 2012 and just pasted the Comprehensive Cancer Center back in. And if you look at the title of the bill and the statement of purpose, nowhere does it say, and by the way, we're also going to grant retroactive coverage to Hospital San Antonio to a time at which they didn't have it, which was June 27th of 2011. Now, I think it's important to... But retroactive coverage is always granted with respect to periods of time where prior to the bill you did not have it. Well, yes, I would agree that that is a truism. So how does that help us? They did precisely what every retroactive bill did. They said the act was retroactive. Because the statement in the title and in the purpose of the bill was to reincorporate those health care providers that had lost it. Reincorporate, bring back in. That's not Hospital San Antonio. They were not excluded. They didn't have it at the time. Now, there's been arguments raised by police that, oh no, we've had this since 2006. Because in 2006, when the Mayaguez Medical Center was added, there was a phrase added, the health care facilities of the municipalities, regardless of whether they were run by private corporations, which describes Hospital San Antonio. The buildings are owned by the municipality, but it's run by Hospital San Antonio Incorporated, a for-profit organization. And their argument is, you see, we always had it. We had it since 2006. Respectfully, no, they didn't. Because in 2012, they lobbied the legislature, and that's in the record, to get it. And their argument was, look, the Mayaguez Medical Center, a sister organization, has it. We don't. We want it. That's what the statement of that bill was. The statement of the bill of 2012 was, yeah, we're going to bring you into the fold. We're going to give you the same benefits that Mayaguez Medical Center had. Now, they haven't made this argument, but they might make the argument, well, that was just for the damages caps. The immunity was always there for the doctors. No, because the language was identical to the damages caps in 2006. And it's our contention, and I don't think it's a point here, that the language about, oh, the medical centers owned by municipalities, even if they're run by private corporations, was just to indicate that that did not forestall being added in the future, those by-name organizations. But in 2012, we know what happened. A bill was passed. They were added by name. And going forward from that point, that is when they enjoyed that immunity. When in 2013, the legislature said, look, we've got to fix this mistake and put back the people we mistakenly took out. That's not Hospital San Antonio, not those health care providers. Now, I'm not sure. There's a lot of swirling around issues of law number 99 that was passed in 2017. The lower court deferred on considering that. We opposed a motion made by appellees to consider that. We then notified that that law, in our opinion, we notified the Secretary of State of Puerto Rico that that law, on its face, we feel is unconstitutional. It's been raised. I'm not sure exactly why it's been raised. And I'm not sure whether this court is inclined to consider that. However, if the court has questions, perhaps unrebuttaled, if it's brought up by appellees, I can answer those. Yes, good morning. Jeanette Lopez de Victoria. I'm arguing for the appellee physicians who are Dr. Juan Jimenez, Dr. Maria Rodriguez, and Dr. Ricardo Sedeño. I have to dispel part of the appellant's arguments regarding the historical importance of Article 41.050. And that is that article was initially enacted in 1976 at a time when the municipal hospitals and the hospitals run by the Commonwealth government, the physicians who worked there, were government employees. This is why the immunity was extended to them, just by virtue of the fact of their employment. So contrary to what he has said, where he dates it back to either 2011, when Hospital San Antonio was added in, that in historical and legislative terms, that's not true. The physicians that worked there did enjoy immunity. What happened was when the health system in Puerto Rico became privatized in 1993, the facility, the physical structure of the hospitals, remained under the auspices of either the government, state government, and or the municipal governments, but they were then run by private entities. And if you look in the legislative history of the various amendments that have taken place to the article, you will see that there is a common theme. And the legislature always states, it has never been our intention to take away the immunity from those who had it. It has always been our intention for those who had it to keep it. So that's why you see these series of amendments that go through the history of the, and you can't read them in isolation. You have to read them one with the other. I would say that although the language, I agree with counsel that the language of them, perhaps the legislature has not been the clearest in executing it, but we are where we are. I would urge the court to confirm the district court one, because I consider that the language of the statute is clear. The operative statute for purposes of the motions for summary judgment was the law 150 of 2013. And the court correctly interpreted that the language of the statute was clear and that the retroactivity that was granted by that statute, which is the main point of the appellant's appeal in this case, as it pertains to the physicians was also clear. Even so the court went a step further and they did examine the legislative history of the various amendments starting back from, I believe it was the 278 law, I'm sorry, 268 and the 150. And if you look even further, if you look forward to law 99, which was enacted in August of 2017, that actually confirms that the district court was correct in its analysis. Because in the legislative statement of that law, it's clarified that it was always their intention, not only to have the immunity, but also to give that immunity retroactively to June 27th, 2011. Which is why I think it's important for this court to look at law 99, because I think as we sit here today, it is probably the clearest statement as to what the legislative intent of an enacting article 41.050 has been. Aren't there cases in the Puerto Rico courts? Why are these in federal court, these cases? They're based on diversity. And aren't there other cases against these same institutions in the Puerto Rico courts? Oh, yes, there are. And some of them are cited in the briefs. The courts that have, the local courts, state courts that have interpreted the article have all found the language to be clear. There's also one other opinion from the district court, which is Munoz versus Hospital Perea, where although it had to do with immunity to a physician, it was Magistrate Bell that was in that case. She also found that the language of the statute was clear. And there was a Puerto Rico Supreme Court case, which is Rodriguez-Figueroa versus, I believe it's Centro de Salud Mario Canaz, which is from April 2017, which although it had to do with the regional medical centers that are used for purposes of medical students, the court gave an exhaustive discussion of this article, and also all of the different amendments that were made and why they were made. And I can give you the site of that case. It's 2017 Westlaw 144970. And that case is cited. I'm sorry, the translation of the case is included in the briefs. I think it's important to. We have the briefs. Are any of these cases in the state courts involving San Antonio Hospital? Virtually all the cases are involving San Antonio. And are any of them on their way up to the Puerto Rican Supreme Court? Well, those cases, some of them haven't been appealed, but the one case that was appealed was the Rodriguez-Figueroa case, which I just mentioned. So that would be the pronouncement from the, and it had to do with, I think that one had to do with Hospital San Lucas. It did not have to do with Hospital San Antonio. But that doesn't, is there anything that deals with the retroactivity issue that's square on, that might go up to the Supreme Court of Puerto Rico? That, I'm not, I practice only in federal courts, so I don't handle cases in the state courts, so I'm not sure if there's anything that might be in the pipeline. I'm sure counsel for the hospital would probably be, since he represents Hospital San Antonio. He might be aware of cases in Puerto Rico. It would be odd if we came out with a decision interpreting these Puerto Rico statutes and the day after the Puerto Rican Supreme Court issued its own opinion on the issue of Puerto Rican law. Yeah, but on the retroactivity statute, I mean on the retroactivity issue as such, I'm not certain if there's any case that's actually going up. Okay. But the cases that have dealt with the statute of family language should be clear. I do want to touch upon what counsel did not, counsel for the appellants did not touch, which is their due process claim. I would argue first that the due process claim was never properly configured before the state court. The plaintiffs failed to file the notice that's required by our federal rule of civil procedure 5.1. Also in their briefs, they argue that the plaintiff's right to file a suit, the right to have access to the courts, was absolutely denied. And that's not true. What the article in question does is it limits who can be a defendant in the case, and it limits it in the case of physicians to the physicians who are granted immunity. Assuming that this court confirms the lower court, the best evidence that her property right to file a suit has not been in any way affected is the fact that her case and her parents' case continues against the hospital for the limits of the state limits, which is $150,000, and also continues against two private physicians who were also sued in that case. The hospital in that situation responds for any alleged negligence that would have been, that would have taken place allegedly by the physicians in question. Once again, thank you. Any questions?  Thank you. Good morning. My name is Carlos Martinez-Vilas. I represent Hospital San Antonio. I can answer the question. There are no cases right now. Could you speak up a little bit? Sure. There are no cases right now in a field at the local courts with regards to the retroactivity. All cases that has been raised the issue of immunity of the physicians and or the liability caps, or has conferred immunity and has conferred the liability cap to the hospital. There is one case that is in the appendix, as is Chiara Nieves, that is from the Court of Appeals of Puerto Rico. It's the only one that has gone that far and confirmed the immunity to the physicians. There was no need to go to the issue of the liability cap was not mature at that moment and plaintiff in that case requested a dismissal later against Hospital San Antonio, so the case was over. But the case resolved in favor of the immunity. And we have cases that were cited in the appendix and also cases after the appendix that has confirmed the liability cap in favor of the hospital. It's important to mention that in this case, Hospital San Antonio operates an initial, Hospital San Antonio Inc. is a private entity that operates Hospital San Antonio with this property. The municipality of Mayaguez is privatization in year 1998. Hospital San Antonio, 90% of its patients are from REFORMA. And it's the only hospital in the western area with PICO and NICU, that's the intensive care for pediatrics. So, we have to recognize the importance of Hospital San Antonio in the western area. And we can't acknowledge the problems of the health reform and the needs for the hospital in order to have the liability cap in order to survive due to the economic problems of the health reform and debt of Hospital San Antonio. In this case, the district court correctly held and was uncontested by plaintiffs. Article 41050 of the insurance code confers immunity to the professionals working at Hospital San Antonio and provides the liability cap to Hospital San Antonio. The court also correctly concluded and was uncontested also that Law 104-1955, at least in its amendment of Act 260 of 2006, conferred the statutory limits to Hospital San Antonio. I mention that because Article 41050 is in the insurance code. And that is the one that provides the liability cap and also established that the physician does not have to have an insurance and are covered by the immunity. The other Act, that is Act 104-1955, that is amended, is still about the claims against the Commonwealth of Puerto Rico. So, when I mentioned that in the brief that Hospital San Antonio has the coverage since 2006, it is covered in the law against claims against the Commonwealth of Puerto Rico because there is a wording that says that the liability limits to actions for damages in malpractice at the health institution, property of the Commonwealth of Puerto Rico, and its municipality, regardless of whether the institution is being administered or operated by a private entity. In this case, it's Hospital San Antonio and the law from the time of the privatization of the hospital. There is a history trend in order to provide the liability cap to those entities, private entities that are administering a property of the Commonwealth of Puerto Rico or a municipality and is considered to provide the benefits, the service for the patients of the reformer. In this case, it has been uncontested. The application of the liability cap and immunity under Article 4150 has been uncontested because it was raised for the first time in the reply of the brief that the liability cap for San Antonio under Law 104 from 1955, according to the Amendment of 206. So the only question that Plaintiff raised in this case was only as to the matter with the retroactivity. But did not question the constitutional retroactivity, only the constitution of according to Article 19, which was clear that that is applies when the language is dubious. In this case, the language is really clear. In this case, we also allege that if there is any, hold on a second, if there is a doubt as to the language or to the constitution, then the case will be certified to the Supreme Court of Puerto Rico. Thank you very much. I think I request that the judgment in this case should be confirmed. Thank you. I'd like to address a couple of things. I think I'll start by just talking about cases were raised. I think Judge Gayati, you asked if there were any cases in the pipeline that considered retroactivity. And I'm inferring from your question, you were wondering if this might be one of those limited examples where the court could exercise a Pullman abstention. I don't think so. And I think it was clear. There is no case that I'm aware of and that certainly the hospital is aware of that is considering this issue. And I would suggest that it would be an undue delay for this court to certify the case to the Puerto Rico Supreme Court. I think in the Dupont Hotel fire, this court said that if there's enough case law that they can look at, they can make the determination. I don't think this is a difficult determination. Secondly, and again, just to address this idea that somehow in 2006, they acquired this immunity through that phrase or also administered by a private entity. Well, if that's the case, why is there not a single case that has been decided based on that? From 2006 to 2011, not one court to my knowledge has said case dismissed. These individuals enjoy immunity. This hospital is entitled to this immunity cap. Not one. Have there been any cases in which any court has found liability notwithstanding the allegation of immunity? Well, respectfully, Your Honor, I'm not sure they could because liability means a non-suit. So, in other words, and by the way, you lead me to my next point. In this case, if this immunity was so clear, why were multiple motions for summary judgment made? Not one physician asserted that immunity, which would have ended the case immediately. And I'll explain why. Because until 2012, they didn't have it and they know they didn't have it. In fact, when we speak about cases, I cannot speak, well, no, I can speak. In my opinion, this entire issue concerns CAK. I don't know that there is another single case that the interpretation of this law affects. Which means that for all the good works that Hospital San Antonio does and the statement of purpose that it wants to provide medical treatment to an underserved community, this one case is not going to change that. It will change CAK's lives forever. This little girl is 10 years still struggling with this. But this is not a weighty issue that will affect anyone going forward. The statute of limitations in Puerto Rico for malpractice is one year. Even with arguably infants who have had malpractice committed on them and have not yet filed, this is a tiny subset of cases. If there are no other questions, Your Honor, I will rest on our recent request that the court reverse the lower court decision. Thank you.